FILED

November 26, 2014

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:39 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: Paulette Cullum

EMPLOYER: K-Mac Holding Corp.
d/b/a Taco Bell

INSURANCE CARRIER: Manufacturer's Alliance

DOCKET #: 2014-07-0006
STATE FILE #: 57676/2014
DATE OF INJURY: July 18, 2014

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Paulette Cullum, (Employee), on October 23, 2013, with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the initiation of medical and temporary disability benefits is appropriate.

The Court conducted a telephonic hearing on November 13, 2014. Employee participated with her Counsel, Charles Holliday. K-Mac Holdings d/b/a Taco Bell (Employer) and Manufacturer's Alliance Insurance Company (Carrier) participated through their Counsel, Alex Elder. Employee testified on her own behalf. Ms. Cantina Watson testified on behalf of Employer.

Considering the positions of the parties, the applicable law, stipulations of the parties and all of the evidence submitted, the Court hereby finds that Employee has not shown by a preponderance of the evidence that she sustained an injury arising out of her employment and that her request for medical and temporary benefits must be denied.

## ANALYSIS

### Issues

1. Whether Employee sustained an injury arising primarily out of and in the course and scope of her employment;

2. If Employee sustained a compensable injury, whether Employee is entitled to a panel of orthopedic surgeons; and

1

3.  Further, if Employee sustained a compensable injury whether Employee is entitled to temporary total disability benefits for any period of time.

## Evidence Submitted

The Court designated the following as the technical record[1]:

- Petition for Benefit Determination (PBD), filed September 18, 2014
- Dispute Certification Notice (DCN), filed October 22, 2014
- Request for Expedited Hearing (REH), filed October 23, 2014
- Wage Statement
- Employer's Response to Request for Mediation and Petition to Determine Benefits

The following documents were admitted into evidence, by stipulation of the parties:

Exhibit 1: Medical Records of Doctor's Clinic of Union City
Exhibit 2: Medical Records of Baptist One-Care
Exhibit 3: Medical Records of MedCor
Exhibit 4: Product Information regarding shoes worn by Employee on the date of injury
Exhibit 5: First Report of Work Injury (FROI)

## History of Claim

On July 18, 2014, while in the course of her employment with Employer, Employee contends to have injured her knee. On that date, she was employed as an assistant manager of Employer's Taco Bell restaurant in Union City. While on the "food line", she turned to either throw away waste product or to reach for a pan; she cannot articulate which. When she turned, her right knee "popped". She recalls this event occurring between 12:00 (Noon) and 1:00 PM.

Employee reported her injury to her supervisor on July 19, 2014. After being given contact information for MedCor, a "workplace injury triage and reporting" provider, Employee called and spoke with a MedCor representative on July 19. The initial call resulted in a reported history as follows: "EE alleges one day ago she was on the line and is unsure of how she injured herself; she states she may have twisted her R knee wrong and now she has pain".

On July 22, after no improvement in her symptomatology, Employee again contacted MedCor. She "alleg[ed] that despite self care she still [had] R knee pain". She had taken over-the –counter medications, applied a knee brace and had mild swelling. She walked with a limp and her knee had "given out x 2 occasions". The MedCor representative "referred" Employee, as described in the note as follows: "In this panel state, the entire designated medical panel has been read to the employee".

---

1 All attachments to the PBD and DCN, with two exceptions, were introduced into evidence at the hearing. The "Employer's Response to Request for Mediation and Petition to Determine Benefits", which consisted primarily of argument, and the wage statement, which was rendered moot given the outcome of the case, were not entered as evidence.

Employee chose Dr. John W. Hale of the Doctor's Clinic of Union City (Doctor's Clinic)[2].

On July 23, 2014, Employee presented at the Doctor's Clinic and saw Dr. Selena Dozier.[3] Employee's history on that date was that the "Incident onset" was "7/18/14" and that "[t]he incident occurred at work". Further, "[t]here was no injury mechanism". Employee stated she "thinks she may have twisted wrong on 7/18 at work". Examination of the right knee revealed normal range of motion, no swelling, no deformity and no ligamentous laxity. X-rays were normal. Employee was diagnosed with knee pain and told to return in two weeks. Upon return, Employee had not improved and was referred to an orthopedist.

On July 24, 2014, a FROI was completed and described the "Injury" as follows: "EE alleges one day ago she was on the line and is unsure of how she injured herself, she states she may have twisted her R knee wrong and now she has pain under the R knee." Five (5) days later, on July 29, 2014, Employer denied Employee's claim because there was no mechanism of injury and because Employee did not report a specific incident. The PBD followed and mediation proved fruitless. After issuance of the DCN, Employee requested an Expedited Hearing. The parties participated in a telephonic hearing on November 13, 2014.

**Employee's Contentions**

Employee contends she sustained an injury arising primarily out of and in the course and scope of her employment with Employer. She contends her allegations satisfy the definition of injury in Tennessee Code Annotated section 50-6-102. Specifically, she first meets the "time and place requirements" of the statute. Second, though she cannot state exactly or with "minute certainty" the incident causing her injury, she did "hurt her knee on the line".

Since she states the incident occurred at work, Dr. Dozier's opinion is presumed correct. Employee, through counsel, argues that Employee did tell Dr. Dozier that she, Employee, "may" have twisted wrong and the word "may" is a colloquialism in West Tennessee that a person *did* have an event at work.

Employee described her shoes worn on the date of the alleged injury as being of the type which are slip-resistant and required by Employer to be worn by employees while working. She argues, through counsel, that the non-slip nature of her shoes may have been the catalyst in Employee's foot "catching" on the surface where she turned while working.

---

2 The medical records entered in evidence as Exhibits 1 and 2 are titled as being "Doctor's Clinic of Union City" and "Baptist One Care", respectively. The records are noted, however, as being from the same provider as Baptist One Care is apparently the administrative entity which lists The Doctor's Clinic as a "Department". For purposes of this case, the records are noted as being those documenting the treatment rendered to Employee by a panel physician detailed more specifically hereinafter.

3 There is no explanation as to why Employee saw Dr. Dozier rather than Dr. Hale. However, Employee voiced no complaint with the approved care being provided by Employer through Dr. Dozier at the Doctor's Clinic.

## Employer's Contentions

Employer contends that Employee did not sustain an injury arising out of her employment. Because Employee has the burden of proof, she must show both that the injury resulted from a specific incident, or set of incidents, and that the injury arose primarily out of the employment. Here, there is no proof of the mechanism of injury. Employee can only say she "may" have twisted her knee and, as such, it is speculative to attribute her alleged injury to the employment. There is no medical proof showing, within a reasonable degree of medical certainty, that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes. Employee's argument that "may" is a colloquialism for having actually hurt one's self is not sufficient under the new law standard because the proof must be specific.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13).

### *Factual Findings*

Employee was employed as an assistant manager at Employer's fast food restaurant. On July 18, 2014, while in the course of her employment, Employee turned and experienced pain in her right knee. Employee timely reported the incident to her employer. Employee is able to identify the date and approximate time of the incident, but she is unable to identify the specific action she was performing when she turned and experienced pain in her right knee. The main issue for determination is whether the incident arose primarily out of her employment.

Employee's medical proof is insufficient to establish an injury arising primarily out of her employment. Dr. Dozier states the incident occurred at work but documents nothing to show the mechanism of injury. As such, the preponderance of the evidence does not support a finding that any work event contributed more than 50% to the alleged injury.

### *Application of Law to Facts*

**Employee did not sustain an injury that arose primarily out of employment with Employer.**

An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and

4

place of occurrence. See Tenn. Code Ann. § 50-6-102(13)(A)(2014). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes. See Tenn. Code Ann. § 50-6-102(13)(B)(2014). The Tennessee Supreme Court has held that, if it is apparent to the rational mind, after considering all of the circumstances that there is a causal connection between the conditions under which the work is required to be performed and the resulting injury, then such accidental injury "arises out of one's employment." *Crew v. First Source Furniture Group*, 259 S.W.3d 656, 664 (Tenn. 2007).

As to the interpretation of section 50-6-102(13), Employer's counsel argues that case law regarding causation under previous versions of the statute should not be controlling. On this narrow point of the requisite proof of causation, the Court agrees. The previous version of Tennessee Code Annotated section 50-6-116 declared the Tennessee Workers' Compensation Act (Act) to be a remedial statute and case law held that any reasonable doubt as to whether an injury arose out of the employment was to be construed in favor of the employee. *See, e.g., Phillips v. A & H Constr. Co.*, 134 S.W.3d 145, 150 (Tenn. 2004). Since causation is a key element of whether an injury arises out of the employment, medical proof of causation was to be given a liberal construction. Conversely, the current version of the same statute, codified by the 2013 Reform Act, prohibits a remedial or liberal construction but, instead, requires a fair and impartial construction. *See* Tenn. Code Ann. § 50-6-116 (2014). Hence, this Court cannot and will not apply a presumption in favor of Employee on the issue of causation. However, prior case law is not only persuasive, but also controlling, when the prior decision is based solely, or in pertinent part, on a previous version of the law which remains unchanged by the 2013 Reform Act. Therefore, in cases where the Supreme Court has addressed a causation issue *not* based on the remedial nature or liberal construction of the prior Act, this Court is bound by the Supreme Court's analysis.

Pursuant to Tennessee Code Annotated section 50-6-239(c)(6), Employee bears the burden of proving each and every element of her claim by a preponderance of the evidence. This current statutory requirement has long been the common law in Tennessee. *See, e.g., Crew,* 259 S.W.3d at 664. In this case, Employee relies upon the medical record of Dr. Dozier and upon her own testimony as proof of her injury. The Court finds the evidence does not preponderate in favor of Employee.

Admittedly, Employee was at work at the time of the alleged injury. Thus, the place of occurrence requirement is satisfied. However, Employee points to no specific event on the date of the alleged injury. Instead, her direct testimony was that she was at work "on the line" and turned to either throw away trash *or* to reach for a pan. In other words, she does not know exactly why she turned in the manner alleged. Further, the timing of the event is suspect. Employee can only pinpoint the time of occurrence to "12 to 1 PM" on July 18. Employer's representative testified clearly that Employee never reported any specific incident to her. Moreover, Dr. Dozier, upon whom Employee relies, states in her July 23, 2014 note that "there was no injury mechanism". *Ex. 2.* Later, Dr. Dozier states in the same note that Employee "*thinks* she may have twisted wrong on 7/18 at work". *Id.* (emphasis added). The MedCore notes indicate on July 19, just one day after the alleged injury, that "EE alleges one day ago she was on the line and is unsure of how she injured herself, she [states] she may have twisted her R knee wrong". *Ex. 3.* Though Employee contests the completeness and perhaps even the veracity of this MedCore record, the totality of the evidence is consistent with what

5

was reported to MedCore; namely that Employee can point to no specific incident as the cause of her injury.

An injury arises primarily out of the employment only if it can be shown to have contributed more than 50% in causing the injury considering all causes. Tenn. Code Ann. § 50-6-102(13)(B)(2014). In this case, the only medical proof supporting a work relation may be found in the record of Dr. Dozier where she states "[t]he incident occurred at work". *Ex. 2*. Of course, these words appear immediately before the words "there was no mechanism of injury". This Court cannot ascribe that the employment contributed fifty percent (50%) or more to the alleged injury based upon the statement "the incident occurred at work", especially when read in context with Employee's statement that she "may have twisted wrong" and set forth in the same office note. Likewise, she informed MedCore the day after the alleged event that she was unsure of how she had injured herself.

In *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935 (Tenn. 1987), the Tennessee Supreme Court defined the causal connection required before an injury will be held compensable under the workers' compensation law. The court opined that causal connection does not mean proximate cause as used in the law of negligence, but instead refers to cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee while doing his work. *Id.* The mere presence at the place of injury, because of the employment, will not result in the injury being considered as arising out of the employment. *Id.* The injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Thornton v. RCA* Serv. Co., 221 S.W.2d 954, 955 (Tenn. 1949).

An idiopathic injury is diametrically opposed to one arising out of the employment. By definition, it is an injury which arises either spontaneously or from a cause which is obscure or unknown. *Merriam-Webster Online*. It is personal to the individual. *Id.* Tennessee law has long held idiopathic injuries are not compensable. For example, in *Wilhelm v. Krogers*, 235 S.W.3d 122 (Tenn. 2007), the Tennessee Supreme Court noted that: "Tennessee courts have consistently held that an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle of water or a step, in addition to the employee's ambulation." *Id.* at 128-29. In other words, an idiopathic injury will be compensable "if an employment hazard causes or exacerbates the injury. *Id. at* 128. (quoting *Phillips v. A & H Constr. Co.*, 134 S.W.3d 145, 148 (Tenn. 2004)). A causal link must exist between the employment and the injury for the incident to be considered as arising out of employment. *Id. at* 128. This Court finds prior authority on the issue of idiopathic injuries to be controlling. Nothing in the 2013 statutory changes regarding the requisite level of causation abrogates the basic requirement that there must be some causal connection to the work. Instead, the law now requires a heightened causal connection to the work by requiring an accident to be the primary cause of injury.

Here, the Court has specifically considered Employee's argument that her shoes may have contributed to the injury because of their non-slip quality. However, Employee offered no direct testimony on this point and such was never mentioned in any medical record. This argument is strained at best and more likely falls in the realm of speculation. This is not a case where an instrumentality, such as a machine or a vehicle, provides a causal connection to the work. Certainly,

6

there is insufficient evidence to support a finding that the employment contributed fifty percent (50%) or more to the alleged work event. Instead, the evidence preponderates in favor of an idiopathic injury. The Court holds that the evidence is too speculative on the issue of causation to support a finding that the injury arose primarily out of the employment.

The remaining issues are pretermitted.

**IT IS, THEREFORE, ORDERED** as follows:

1. The claim of Employee against Employer or its workers' compensation carrier for the requested medical and temporary benefits is denied, at this time, on the grounds of compensability.

2. This matter is set for Initial Hearing on January 15, 2015 at 9:00 a.m. CST.

**ENTERED this the 26th day of November, 2014.**

_____
**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers Compensation. You must dial in at 731-422-5263 or 855-543-5038 toll free at to participate in your scheduled conference.**

**Please Note:  You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of November, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Charles L. Holliday | | | | | x | chuckh@garretylaw.com |
| Alex C. Elder | | | | | x | alex@holleyelder.com |

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

9